**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Viktor Novosel

     v.                                 Civil No. 10-cv-165-PB

William L. Wrenn et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff, Viktor Novosel, an inmate at the New Hampshire State Prison ("NHSP"), has filed a complaint (doc. no. 1), asserting that defendants have violated, and continue to violate, his federal constitutional rights under the First, Eighth, and Fourteenth Amendments by rejecting letters written to him by family members in Croatian, by not informing him that his mail has been rejected, and by not providing an opportunity for him to appeal the rejection of his mail. In addition to William L. Wrenn, Commissioner, New Hampshire Department of Corrections, Novosel lists as defendants Capt. Chris Kench, Office of the Commissioner, who is responsible for Corrections Department policies and procedures relating to inmate mail; Richard M. Gerry, Warden, New Hampshire State Prison; and "John Doe," an unnamed NHSP mailroom supervisor responsible for mailroom operations, including logging in mail, notifying inmates regarding the rejection of mail, and supervising

mailroom staff.

The complaint (doc. no. 1) is before me for preliminary review to, among other things, identify cognizable claims and to dismiss claims upon which no relief can be granted.  See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2) (magistrate judge is designated to conduct preliminary review of prisoner complaints).

### Standard of Review

Under LR 4.3(d)(2), when a prisoner files an action pro se, the magistrate judge conducts a preliminary review.  In a preliminary review, pro se pleadings are construed liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and

unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pleading filed pro se should be dismissed for failing to state a claim on which relief could be granted, the Court must consider whether the allegations, construed liberally, Erickson, 551 U.S. at 94, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'"  Id. (citation omitted).  Determining if the pleadings state a viable claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950 (citation omitted).

## Background

Novosel has been incarcerated at NHSP for more than thirty-five years.  His native language is Croatian.  Novosel's older brother, Mijo, currently in his 80s and living in Canada, cannot write in English.  Mijo and other family members have written in Croatian to Novosel at the NHSP for more than three decades, providing family news.  From 1973 until late 2006, Novosel corresponded with Mijo and other family members in their native Croatian without any interference by prison officials.

Novosel recently learned that beginning in late 2006, the NHSP mailroom has not delivered any letters written to Novosel in Croatian.  Novosel received no contemporaneous notice that the letters had been rejected.  Additionally, the prison mailroom returned Mijo's letters without explaining to Mijo or Novosel why they had been returned, or how to appeal the rejection.

Mijo's daughter, at Mijo's request, has occasionally written to Novosel.  All of her letters are in English, and all have been delivered.

Sometime prior to August 30, 2009, Mijo mailed a letter to Novosel from Croatia to let him know that their sister and younger brother had died.  Mijo enclosed family pictures in the

envelope.  Not hearing back from Novosel, upon returning home to Canada, Mijo sent a letter by certified mail to Novosel at the NHSP address, hoping that the use of certified mail would force the NHSP to let Novosel know about the deaths in their family.

The NHSP mailroom did not deliver either letter to Novosel. Instead of receiving any notice of why the letters were not delivered or any opportunity to appeal before the letters were returned, Novosel received an unsigned note from prison staff telling him that letters from his brother had been rejected.

On August 30, 2009, Novosel sent an inmate request slip to the mailroom to complain about the rejection of the letters, the lack of timely notice, and the lack of an opportunity to appeal the rejection before the letters were sent back.  In response, the mailroom asked Novosel to provide additional information about the letters, specifically, "What were they rejected for?" and "What was written on the envelopes?"

Dissatisfied with the lack of a substantive response, Novosel followed up with a second inmate request slip on September 3, 2009.  The mailroom staff responded by rubber-stamping on the inmate request slip a citation to Prison Policy Directive ("PPD") 5.26, which states that incoming mail must include the inmate's identification number in the address, and

5

that letters failing to include that number will be returned as undeliverable.

Novosel filed a grievance regarding the issue with Warden Richard Gerry.  Gerry's response was that the NHSP has no duty to notify an inmate when incoming mail is rejected.

Novosel elevated the issue to Commissioner Wrenn, specifically complaining that he had received no notice of the rejection of the letters and had no opportunity to appeal the issue before the letters were returned to Mijo.  Defendant Kench denied the grievance, stating that inmates are not notified when mail is rejected due to an improper address.

Maintaining that the mailroom returned the letters because they were written in Croatian, Novosel filed this action based on claimed violations of his constitutional rights.  Citing 42 U.S.C. § 1983, which provides a cause of action for individuals to sue state actors for violating federal rights, Novosel asserts the following claims[1]:

1. Defendants violated Novosel's First Amendment right to correspond with his family in his native language, by rejecting letters written to him because they were written in Croatian.

---

[1]The claims, as identified herein, will be considered to be the claims raised in this case for all purposes.  If Novosel objects to the claims as identified here, he must do so by filing a timely objection to this Report and Recommendation or by properly moving to amend his complaint.

6

2.   Defendants violated Novosel's right to due process
under the Fourteenth Amendment, by rejecting letters
sent to him:  (a) without notifying him of the
rejection; (b) without providing any reason for the
rejection; and (c) without providing any opportunity
to appeal that rejection before the letters were
returned.

3.   Defendants' policy and practice of rejecting letters
written in Croatian violates Novosel's right to equal
protection under the Fourteenth Amendment, as it
subjects him to discrimination in the handling of his
mail on the ground of national origin.

4.   Defendants' policy and practice of rejecting letters
written in Croatian violates Novosel's right to be
free from unconstitutional conditions of confinement
under the Eighth Amendment, because prison staff apply
their own personal prejudices and opinions as a
standard for prison mail censorship.

Novosel has requested relief including a declaratory

judgment and injunctive relief, prohibiting defendants from

depriving him of correspondence in Croatian without notice and

an opportunity to be heard, directing defendants to amend its

policy on inmate mail, barring retaliation against him, and

ordering defendants to pay his costs.[2]

---

[2] In the complaint (doc. no. 1), Novosel has requested
preliminary and permanent injunctive relief.  I note, however,
that Novosel has not filed a motion for a preliminary
injunction, in accordance with the requirements of the federal
rules.  See Fed. R. Civ. P. 7(b)(1) ("A request for a court
order must be made by motion."); Fed. R. Civ. P. 65.

Discussion

I.   First Amendment (Claim 1)

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).  Prison inmates maintain a First Amendment right, albeit not an unlimited right, to send and receive mail.  See Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977); see also Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Ortiz v. Fort Dodge Corr. Facility, 368 F.3d 1024, 1026 (8th Cir. 2004) (prisoners have right to send and receive mail subject to prison officials' legitimate interest in monitoring mail for security reasons).  A prisoner has a right under the First Amendment to correspond with family members in their native language.  See Kikumura v. Turner, 28 F.3d 592, 596 (7th Cir. 1994).  In Kikumura, a decision "narrowly limited" to the situation where the prison made "no effort at all" to accommodate the constitutional rights of prisoners native in languages other than English, the Seventh Circuit struck down a prison policy prohibiting inmates from receiving materials written in a language other than English.  Id. at 598; see also Thongvanh v.

Thalacker, 17 F.3d 256, 259-60 (8th Cir. 1994) (prison policy
prohibiting inmate from sending and receiving mail in Lao
violated First Amendment, where prison officials had access to
cost-free translation service); Ramos v. Lamm, 639 F.2d 559, 581
(10th Cir. 1980) (prison officials violate prisoner's First
Amendment rights when they refuse to deliver incoming personal
mail simply because it is not written in English).

Prison regulations burdening inmate constitutional rights
pass muster if they are "reasonably related to legitimate
penological interests."  Turner v. Safley, 482 U.S. 78, 89
(1987).  A court, in evaluating whether or not a particular
prison regulation is constitutional, considers four factors: (1)
whether the regulation has a "valid, rational connection" to a
legitimate penological objective, (2) "whether alternative means
are open to inmates to exercise the asserted right," (3) "what
impact an accommodation of the right would have on guards and
inmates and prison resources," and (4) "whether there are 'ready
alternatives' to the regulation."  Overton v. Bazzetta, 539 U.S.
126, 132 (2003) (citing Turner, 482 U.S. at 89-91).  The Supreme
Court has "urged lower courts to exercise restraint and give
appropriate deference to the expert judgments of prison
administrators."  Starr v. Coulombe, 2009 WL 224968, at *4

9

(D.N.H. Jan. 29, 2009) (citing <u>Turner</u>, 482 U.S. at 84-85),
<u>aff'd</u>, 368 Fed. App'x 156 (1st Cir. 2010).  In applying these
factors, this Court must accord prison administrators
significant deference in defining legitimate goals for the
corrections system, and for determining the best means of
accomplishing those goals.  <u>See</u> <u>Overton</u>, 539 U.S. at 132; <u>Pell</u>,
417 U.S. at 826-27.  The burden is on the prisoner to disprove
the validity of prison regulations.  <u>See</u> <u>Overton</u>, 539 U.S. at
132.

As a preliminary matter, I must consider whether the facts
plausibly support Novosel's assertion that the mailroom returned
Mijo's letters because they were written in Croatian, a foreign
language.  Whenever Mijo's daughter has written to Novosel,
Novosel has received the letters.  Those letters are always
written in English.  Since late 2006, none of Mijo's letters in
Croatian have been delivered, and the prison has provided Mijo
with no explanation why his letters are not delivered.  While
Novosel has not expressly alleged that his niece used the same
prison address that her father has used, nothing in the
complaint suggests otherwise or that the addresses on the post-
2006 letters differed from those sent prior to 2006.  Construing
the complaint liberally, I find support for Novosel's assertion

that the language in which the mail was written was the factor
differentiating letters delivered from letters returned.

As to the specific letters that Mijo sent in 2009 to his
brother regarding the deaths of family members in Croatia,
prison officials initially failed to provide Novosel with any
reason at all for their rejection.  In fact, they asked Novosel
to provide them with that information, indicating that they did
not have any record of why the letters were rejected.  Mijo's
brother never received any explanation from the prison regarding
why his letters were returned.  Those facts render suspect the
mailroom's later, perfunctory recitation of the rule that
incoming letters will be rejected without an inmate number.
Therefore, construing the complaint (doc. no. 1) liberally, and
applying a degree of common sense, I find plausible Novosel's
assertion that the mailroom began in late 2006 to reject letters
because they were written in Croatian.

Applying the Turner factors to the practice of rejecting
mail written in Croatian, and presuming it to be content neutral
and rationally related to an institutional interest in prison
security, the facts alleged do not demonstrate that the prison's
response was reasonably related to that interest.  Novosel has
alleged that his elder brother – a native speaker of Croatian

11

living in Canada – cannot write in English and cannot rely on
anyone else to write letters for him.  The prison's previous
practice, implemented in Novosel's case for decades prior to
late 2006, allowed Novosel to send and receive correspondence in
Croatian.  It is true that Novosel will ultimately be
responsible for showing that there exists a ready alternative to
returning Mijo's letters, one that would not be unduly
burdensome to the prison.  See Thongvanh, 17 F.3d at 259
(prison's "English only" rule as applied to inmate's
correspondence in Lao violated First Amendment, in that inmate
showed that prison had access to cost-free translation service);
cf. Sisneros v. Nix, 884 F. Supp. 1313, 1333 (S.D. Iowa 1995)
(inmate's failure to provide any proof as to existence of cost-
effective alternative to prison's "English only" rule
distinguished case from Thongvanh, 17 F.3d at 259, and warranted
summary judgment for defendants), aff'd in part, rev'd in part
on other grds., 95 F.3d 749, 751 n.2 (8th Cir. 1996).  At this
stage of the case, I conclude that Novosel has alleged
sufficient facts to show that the prison's own practice of
allowing him to receive Croatian letters for more than thirty
years constitutes such an alternative.

Therefore, I find that Novosel has alleged facts sufficient to state a viable claim under the First Amendment, challenging the rejection of letters written in Croatian.  See Kikumura, 28 F.3d at 598 (where prison made "no effort at all" to accommodate constitutional rights of prisoners native in languages other than English, prison policy prohibiting inmates from receiving materials written in foreign language was invalid).  In an Order issued this date, I have directed service of Novosel's First Amendment claim on defendants.

II.  Due Process

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Novosel has invoked the guarantee of procedural due process in contending that the prison was required to provide him with notice and an opportunity to be heard prior to rejecting personal letters addressed to him.

A court evaluating a due process claim must determine whether the plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property.  See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008) ("The test for a procedural due process violation requires the

13

plaintiffs to show first, a deprivation of a protected . . .

interest, and second, a denial of due process.").

> In Procunier v. Martinez, the Supreme Court held
> "[t]he interest of prisoners and their correspondents
> in uncensored communication by letter, grounded as it
> is in the First Amendment, is plainly a 'liberty'
> interest within the meaning of the Fourteenth
> Amendment even though qualified of necessity by the
> circumstance of imprisonment."

Bonner v. Outlaw, 552 F.3d 673, 676 (8th Cir. 2009) (quoting

Procunier v. Martinez, 416 U.S. 396, 418 (1974), overruled on

other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14

(1989)). Considering a case involving prison officials'

rejection and return of mail sent by a lawyer to his client in

prison, the Eighth Circuit in Bonner concluded that the "case

law is clear that an inmate has a right to procedural due

process – including notice – whenever any form of correspondence

addressed to that inmate is rejected." Bonner, 552 F.3d at 678.

The Bonner court, after expressing doubt about the applicability

of Turner to a policy affecting the due process right at issue,

nevertheless applied the Turner factors in finding that the

policy was unreasonable in violating the prisoner's due process

right to notice. See id. Finding no error in the Eighth

Circuit's analysis in a case like Novosel's, involving mail

returned without notice, I conclude that prison officials had a

14

duty to provide Novosel with constitutionally adequate procedural protections before returning Mijo's letters.

"[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon v. Burch, 494 U.S. 113, 126 (1990).  Novosel was denied notice by way of a written rule, regulation, or prior practice that mail written in Croatian would not be delivered.  Novosel received no notice of the rejection of specific letters written to him in Croatian, and neither he, nor his brother, received any timely statement of reasons why the letters were rejected or any opportunity to challenge the rejection of the letters. Novosel, therefore, has sufficiently alleged a denial of adequate notice and opportunity to appeal an adverse determination, for the purposes of stating a viable due process claim.  Accordingly, in an Order issued this date, I have directed service of the due process claim on defendants.

III. Equal Protection

The Fourteenth Amendment prohibits states from denying persons in their jurisdiction equal protection of the laws.  See U.S. Const. amend. XIV.  "Equal protection analysis turns on the intended consequences of government classifications."  Hernandez

v. New York, 500 U.S. 352, 362 (1991).  Official action will not
be found to violate the Equal Protection Clause without proof of
a discriminatory intent or purpose.  See id. at 359 (citing
Arlington Hghts. v. Metro. Housing Dev. Corp., 429 U.S. 252,
264-65 (1977)).  Discriminatory purpose implies that the
decisionmaker selected a course of action "at least in part
'because of,' not merely 'in spite of,' its adverse effects upon
an identifiable group."  Personnel Admin. v. Feeney, 442 U.S.
256, 279 (1979) (citation omitted).

One requirement for stating a valid claim of disparate
treatment under the Fourteenth Amendment is that the plaintiff
must show that he was treated differently from others similarly
situated.  Estate of Bennett v. Wainwright, 548 F.3d 155, 166
(1st Cir. 2008).  "A similarly situated person is one that is
'roughly equivalent' to the plaintiff 'in all relevant
respects.'"  Id. (citations omitted).

One court has observed that "language is a close and
meaningful proxy for national origin," and that "restrictions on
the use of languages may mask discrimination against specific
national origin groups or, more generally, conceal nativist

sentiment." [3]  Accordingly, this Court must be circumspect in

dismissing an equal protection claim involving a challenge to an

alleged language-based classification.  One apparent difficulty

with Novosel's claim, however, is his failure to allege any

facts suggesting that other inmates are treated differently than

him, from which a plausible inference of national origin

discrimination could arise.  For example, Novosel has alleged no

facts regarding whether other inmates receive all of their

foreign language mail.  See Thongvanh, 17 F.3d at 259 (prison

violated inmate's right to equal protection by restricting his

correspondence in Lao while allowing Spanish- and German-

speaking inmates to correspond in their native languages).  Nor

has he specifically alleged that other inmates routinely receive

correspondence without inmate numbers if their correspondence is

written in English.  Rather, Novosel points only to his own

circumstances, which, at most, could be liberally construed as

---

[3] Yniguez v. Arizonans for Official English, 69 F.3d 920, 947-48
(9th Cir. 1995), vacated on other grounds, 520 U.S. 43 (1997).
See also Hernandez, 500 U.S. at 371 ("It may well be, for
certain ethnic groups and in some communities, that proficiency
in a particular language, like skin color, should be treated as
a surrogate for race under an equal protection analysis.");
Sandoval v. Hagan, 197 F.3d 484, 509 n.26 (11th Cir. 1999)
(while Supreme Court has never held that language may serve as
proxy for national origin, it "has observed the close nexus
between language and national origin"), rev'd on other grounds
sub nom. Alexander v. Sandoval, 532 U.S. 275, 279 (2001).

suggesting that the prison mailroom has employed an English-only rule affecting Novosel's incoming mail since late 2006.  As Novosel has failed to plead facts suggesting that similarly-situated inmates have been treated differently, in a manner giving rise to a plausible inference of national origin discrimination, I recommend dismissal of Novosel's equal protection claim.

IV.  <u>Eighth Amendment</u>

The Eighth Amendment prohibition against cruel and unusual punishment requires a prisoner to show that the conditions of confinement fell below the "minimal civilized measure of life's necessities."  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).  An inmate must also show that a responsible prison official was deliberately indifferent to the inhumane conditions of confinement, a standard that requires actual, subjective appreciation of a risk of harm that may be likened to criminal recklessness.  <u>See</u> <u>Giroux v. Somerset County</u>, 178 F.3d 28, 32 (1st Cir. 1999).

Here, Novosel has not alleged any facts suggesting that denying him access to his brother's letters, or subjecting him to the opinions or prejudices of prison staff in censoring his mail has caused him to suffer a loss of the minimal measure of

life's necessities. Novosel has not alleged facts suggesting that prison officials have denied him access to his brother's letters for the purpose of causing him distress or with deliberate indifference to his mental health. Accordingly, I recommend dismissal of the Eighth Amendment claim. See Harris v. Moore, 2007 WL 4380277, at *9 (E.D. Mo. Dec. 13, 2007) (prison officials' barring prisoner's receipt of letters from his wife containing more than five enclosed pages of religious materials did not violate Eighth Amendment); see also Thomas v. Farley, 31 F.3d 557, 559 (7th Cir. 1994) (denial of leave for prisoner to attend mother's funeral, due to an "innocent if possibly careless mistake" or negligence, was not cruel and unusual punishment).

V.   Supervisory Capacity Claims

Novosel has alleged that defendants Wrenn, Gerry, Kench, and "John Doe," an unnamed supervisor in the mailroom, are responsible for developing and applying policies or practices that violate Novosel's constitutional rights, and for failing to respond to Novosel's grievances about mail.[4]  In their capacities

---

[4] **Error! Main Document Only.**If Novosel wishes to pursue claims against "John Doe," he must obtain the officer's full name and move to amend the complaint.  To this end, after the complaint has been served on Wrenn, Gerry, and Kench, Novosel can serve them with interrogatories to obtain the mailroom supervisor's

as supervisors, defendants are responsible for responding to inmate requests, administering grievance procedures, developing prison policies, and supervising prison staff.

There is no supervisory liability in § 1983 actions based on a respondeat superior theory of liability.  See Ashcroft, ___ U.S. at ___, 129 S. Ct. at 1949.  "Supervisory liability under § 1983 cannot be 'predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions.'"  Aponte Matos v. Toledo-Davila, 135 F.3d 182, 192 (1st Cir. 1998) (citation omitted).  A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation."  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  In other words,

> supervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation.

Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009).

---

name, pursuant to Fed. R. Civ. P. 33.  That rule states, in pertinent part:  "Unless otherwise stipulated or ordered by the court, a party may serve upon any other party no more than 25 written interrogatories, including all discrete subparts" to be answered by the party served, who shall furnish such information as is available to that party.  Id.  See also Fed. R. Civ. P. 26(a)(1)(B)(iv) & 26(d)(1) (actions brought pro se by inmates in state custody are exempt from discovery moratorium).

"[S]upervisory liability under a theory of deliberate indifference 'will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.'" Id. (citation omitted).  A supervisor is not deliberately indifferent, for purposes of § 1983 liability, if he or she is alleged merely to have been present for, or otherwise obtains knowledge of, the wrongdoing of a subordinate, or if the supervisor promulgated a policy that does not, on its face, direct or condone the wrongful conduct of subordinates.  Id.

Here, Novosel alleges that each defendant participated in the unconstitutional deprivations by condoning their subordinates' practice of rejecting mail written in Croatian, without providing him with prior notice or an opportunity to appeal the rejection.  Specifically, defendants refused to remedy, and in fact continued to support, the violations and improper policies or practices brought to their attention through the inmate request and grievance processes.  Accordingly, these defendants can be sued in their supervisory capacities under section 1983.

21

<u>Conclusion</u>

For the foregoing reasons, the court should dismiss the Eighth Amendment conditions of confinement claim and Fourteenth Amendment equal protection claim asserted by Novosel, enumerated as Claims 3 and 4 above.  The First Amendment and Fourteenth Amendment due process claims (numbered 1 and 2) may proceed, and service of those claims on the named defendants in their supervisory capacities is directed in an Order issued this date.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauth. Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
Landya B. McCafferty
United States Magistrate Judge


Date:  November 18, 2010

cc:  Victor Novosel, pro se

LBM:nmd


22