UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Viktor Novosel**

    **v.**                                    Case No. 10-cv-165-PB
                                                                                    Opinion No. 2011 DNH 210
**NH Department of Corrections,**
**Commissioner et al.**


MEMORANDUM AND ORDER

Viktor Novosel, an inmate at the New Hampshire State Prison ("NHSP"), brings suit against a number of prison officials under 42 U.S.C. § 1983 for constitutional violations regarding the delivery of his mail.  Specifically, he contends that defendants violated his First Amendment and Fourteenth Amendment due process rights by rejecting his brother's letters written in Croatian, by not informing him that his mail had been rejected, and by not providing him an opportunity to appeal the rejections.  All parties move for summary judgment.  For the reasons provided below, I grant the defendants' motion.


I.  BACKGROUND

Novosel has been incarcerated at the NHSP for more than thirty-five years.  From 1973 until late 2006, he corresponded

with his brother Mijo and other family members in their native Croatian.  Mijo is in his 80s, lives in Canada, and cannot write in English.  From late 2006 until August 2009, Novosel did not receive any letters written in Croatian, although Mijo told him he sent a number of such letters during that time period and that the prison returned those letters.  Novosel received Mijo's letters only when they were written in English by Mijo's daughter.

Novosel first found out that the prison was rejecting Mijo's letters in February 2007.  Approximately a year later, on February 20, 2008, Novosel submitted an inmate request slip asking for an explanation as to why Mijo's letters had been rejected.  A mailroom official responded with a suggestion that Novosel ask Mijo to examine the envelope for an explanation and referred Novosel to Policy and Procedure Directive ("PPD") 5.26, which provides that letters without an inmate identification number will be returned as undeliverable.  Novosel did not proceed with the NHSP grievance procedure at this time.

In December 2008, he received a Christmas card from Mijo written in English.  Mijo informed him that the prison continued to return Mijo's letters written in Croatian.  Then, in August

2009, Novosel received a letter from Mijo written in Croatian that had been sent via certified mail.  The letter informed him that Mijo had previously sent a letter to Novosel from Croatia telling him about the deaths of their two siblings.  Novosel never received his brother's letter.

On August 30, 2009, Novosel sent an inmate request slip to the mailroom to complain about the rejection of his brother's letters, the lack of timely notice, and the lack of an opportunity to appeal the rejection before the letters were sent back.  In response, the mailroom asked Novosel to provide additional information about the letters, specifically, "What were they rejected for?" and "What was written on the envelopes?"

Dissatisfied with the response, Novosel followed up with a second inmate request slip on September 3, 2009.  This time the mailroom staff responded by rubber-stamping on the inmate request slip a citation to PPD 5.26 requiring that all mail contain the addressee's inmate identification number.  Novosel then filed a grievance regarding the issue with the Warden, who informed him that the NHSP has no duty to notify an inmate when

incoming mail is rejected.  A subsequent grievance to the
Commissioner was denied on the same ground.

Maintaining that the mailroom returned the letters either
because they were written in Croatian, or because unnamed prison
employees related to his ex-wife intentionally interfered with
his mail, Novosel filed this action in April 2010.  The
Magistrate Judge recommended dismissing his Fourteenth Amendment
equal protection and Eighth Amendment claims, and allowing his
First Amendment and Fourteenth Amendment due process claims to
proceed.  Doc. No. 7 at 22.  I approved the Magistrate Judge's
recommendations.  Doc. No. 12.


## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and that the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a).  The evidence submitted in support of the motion must be
considered in the light most favorable to the nonmoving party,
drawing all reasonable inferences in its favor.  See <u>Navarro v.
Pfizer Corp.</u>, 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

III.  **ANALYSIS**

Novosel argues that the defendants violated his First Amendment rights by failing to deliver certain letters that his brother Mijo wrote to him in Croatian.  He speculates that the prison refused to deliver the letters either because they were written in Croatian or because an unnamed person working in the mail room with ties to his ex-wife prevented the letters from being delivered.  To the extent that the letters were not delivered because they failed to include an inmate identification number with the address as is required by PPD 5.26, he alternately argues that the PPD is an unjustified

restriction on his First Amendment right.  Finally, he claims that the defendants violated his right to due process by failing to inform him of the fact that the prison was refusing to deliver the letters.  I address each argument in turn.

**A.    First Amendment Claim**

A prison inmate "clearly retain[s] protections afforded by the First Amendment . . . ." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  This includes the right to send and receive mail.  See, e.g., Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987); Procunier v. Martinez, 416 U.S. 396 (1974).  The right, however, is not absolute, as it may be curtailed where it is "inconsistent with [an inmate's] status as a prisoner or with the legitimate penological objectives of the corrections systems." Pell v. Procunier, 417 U.S. 817, 822 (1974).

Novosel presents three arguments to support his claim that the defendants lacked a legitimate penological reason for refusing to deliver his brother's letters.  None can survive defendants' motion for summary judgment.

### 1.  <u>Rejection of Letters Because They Were in Croatian</u>

Novosel first contends that the real reason that the prison rejected his brother's letters was because they were written in Croatian.  Because this is not a legitimate reason to refuse to deliver inmate correspondence, he argues, the defendants violated his First Amendment rights in refusing to deliver the letters.  Assuming, without deciding, that the rejection of his letters on this basis constitutes a First Amendment violation, Novosel cannot avoid summary judgment because he has failed to present any admissible evidence to support his speculation that the prison rejected his brother's letters because they were written in Croatian.  He cannot rely solely on his beliefs and bare allegations to survive summary judgment.  See <u>Ruiz-Rosa v. Rullán</u>, 485 F.3d 150, 156 (1st Cir. 2007).

The NHSP mailroom corporal stated in an affidavit that mail sent to inmates is not rejected for being written in a language other than English.  Knieriemen Aff. ¶ 4, Doc. No. 45-10.  Novosel has failed to produce any evidence to counter that assertion.  The only evidence he proffers is an affidavit of Mijo's daughter, which simply relates Mijo's unsubstantiated belief that the letters were rejected because they were written

in Croatian.  Tucker Aff. ¶ 5, Doc. No. 45-9.  Novosel has not
produced any admissible evidence from Mijo regarding the
rejected letters, including the letters themselves or the
envelopes bearing the prison's stamped rejection rationale.
Without such evidence, I cannot infer that the rejected letters
contained Novosel's correct inmate number and were otherwise
deliverable.

Because Novosel provides no evidence that his letters were
rejected because they were written in Croatian, this basis for
his First Amendment claim fails for lack of "competent evidence
of record that shows a genuine issue for trial."  Ruiz-Rosa, 485
F.3d at 156.

### 2.    Rejection of Letters Due to Animus

Novosel's contention that unnamed prison employees
associated with his ex-wife deliberately interfered with his
mail by wrongfully returning Mijo's letters similarly fails for
lack of evidence.  He does not identify any particular employee
or provide evidence that such an employee had access to incoming
mail.  Nor does he provide any evidence that anyone in the
mailroom was biased against him or intentionally interfered with
his mail.  Rather, Novosel offers only his beliefs in this

8

regard, without supporting those beliefs with specific facts. Without actual evidence of intentional interference, Novosel cannot demonstrate the existence of a genuine issue for trial. See id.

### 3.   **Constitutionality of PPD 5.26**

In response to Novosel's allegation that his letters were wrongfully returned to sender, defendants have offered an alternative reason as to why they might have rejected Mijo's letters.  Per PPD 5.26, mail that does not contain a correct inmate identification number is considered undeliverable. Knieriemen Aff. ¶ 5, Doc. No. 45-10.  All undeliverable mail with a return address is stamped "return to sender" and marked "insufficient address."  Id.  The envelope is also stamped with the following: "Per PPD 5.26 all incoming and outgoing mail will have inmate # affixed to all correspondence.  Failure to comply with this directive will result in mail being returned as undeliverable due to improper address."  Id.  The prison does not keep a log of rejected letters, nor does it send notice to the inmate to whom the undeliverable letter was sent.  Id. ¶ 6. Although there is no evidence in the record regarding the appearance of the envelopes returned to Mijo, each time Novosel

filed a grievance regarding the rejected mail, the prison cited PPD 5.26 as a possible reason for the rejection.

Novosel argues that even if the letters at issue were rejected because they did not contain his inmate number, PPD 5.26 is unconstitutional because the NHSP could nonetheless have delivered his mail with no undue burden.  In mounting a constitutional challenge to the regulation, the burden is on Novosel to disprove its validity.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003) ("The burden [] is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").  He has failed to bear that burden.

Four factors are relevant in deciding whether a particular prison regulation is constitutional: "[1] whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; [2] whether alternative means are open to inmates to exercise the asserted right; [3] what impact an accommodation of the right would have on guards and inmates and prison resources; and [4] whether there are 'ready alternatives' to the regulation."  Id. (citing Turner, 482 U.S. at 89-91).  In applying these factors, I must accord "substantial deference to the professional judgment of prison administrators, who bear a

10

significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  Id.

Applying the four Turner factors to the instant case, I conclude that PPD 5.26 does not constitute an unconstitutional infringement on Novosel's First Amendment rights.  First, the inmate number requirement is rationally related to a legitimate, content-neutral governmental interest of ensuring an efficient and accurate processing of mail in an environment where misdelivered mail may endanger inmate safety.  See Turner, 482 U.S. at 89-90.  Second, inmates have alternative ways of informing family and friends of their correct mailing address, including sending letters, making phone calls, and communicating during visits.  See id. at 90.  In addition, upon receipt of an undelivered letter, the sender can remedy the defect and resend the letter, because the PPD 5.26 stamp on the envelope informs the sender of the reason for the rejection.

Third, accommodating mail without a correct inmate number would negatively impact the efficiency of mail processing and drain limited mailroom resources by requiring staff to identify the correct recipient.  See id.  That extra step would reduce

11

resources available to screen deliverable mail for contraband, delay the delivery of mail for other inmates, and increase the risk of misdelivery of incoming mail.  Knieriemen Aff. ¶ 10, Doc. No. 45-10.

Fourth, the alternative Novosel suggests, namely changing the policy to permit the delivery of mail without correct inmate numbers to inmates whose names are unique, is not "an obvious, easy alternative."  See Turner, 482 U.S. at 90-91.  Such an alternative would require the prison to entrust low-level staff with the discretionary authority to determine which names are sufficiently unique to warrant delivery, a result that would defeat the purpose of the current policy of ensuring efficient and predictable processing of mail.

Therefore, I conclude that Novosel's challenge to the constitutionality of PPD 5.26 is without merit.[1]  I do so bearing in mind that Novosel has the burden of proving that the prison regulation is invalid, and that prison officials' judgments as

---

[1] Given my conclusion that Novosel's claim fails on the merits, I need not consider defendants' arguments that the statute of limitations bars the claim and that Novosel has not properly exhausted his administrative remedies under the PLRA.

to the appropriate means of furthering penological goals are
owed significant deference.  See Overton, 539 U.S. at 132.

**B.    Fourteenth Amendment Due Process Claim**

Novosel also contends that the prison's failure to provide
him with prior notice of and an opportunity to appeal the
prison's refusal to deliver the letters violated his due process
rights.  Given that he has not demonstrated that the letters
were rejected either because they were written in Croatian or
because of the animus of an employee affiliated with his ex-
wife, the only issue is whether the prison had to provide
Novosel with notice and opportunity to appeal the rejection of
letters lacking his correct inmate number.  Because these
procedural protections are not constitutionally required,
defendants are entitled to summary judgment with respect to
Novosel's due process claim.

When a prison rejects an inmate's letter because of its
contents, due process requires that the inmate be notified of
the rejection and given a reasonable opportunity to protest that
decision.  Martinez, 416 U.S. at 417-18.  Novosel cites no cases
requiring the same when a letter is rejected unopened based on
perceived defects on the envelope, such as an incomplete

13

address.  If Mijo's letters were rejected per PPD 5.26 because
he did not include Novosel's inmate number, the rejection in no
way constituted censorship that would violate Novosel's due
process rights.  See Sikorski v. Whorton, 631 F. Supp. 2d 1327,
1348 (D. Nev. 2009) ("Due Process [] does not require defendants
to provide plaintiffs notice and an opportunity to appeal the
decision . . . regarding mail that was returned to the sender
because of noticeable violations on the outside of the envelope
. . . ."); see also Jeffries v. Snake River Corrs. – Or., Civ.
No. 05-1851-JO, 2008 WL 3200802, at *5 (D. Or. Aug. 4, 2008)
(analyzing the issue under the First Amendment and concluding
that "the prison's policy of not notifying inmates about mail
that has been returned to the sender for a noticeable violation
[such as an incomplete inmate address] is constitutional").  In
fact, the NHSP policy of returning insufficiently addressed mail
without notice to recipient is consistent with the procedure of
the U.S. Postal Service.

     Once again, the issue is governed by Turner.  See Avery v.
Powell, 806 F. Supp. 7, 12 (D.N.H. 1992) ("Courts analyzing
prison regulations concerning incoming mail use the Turner
standard to determine whether the regulation violates an

inmate's due process rights."). Under the first <u>Turner</u> factor,
the policy of returning to sender unopened, noncompliant
incoming mail without providing the recipient-inmate prior
notice or an opportunity to appeal is rationally related to a
legitimate governmental interest of conserving scarce resources.
<u>See</u> 482 U.S. at 89-90. Documenting undeliverable letters and
notifying inmates would impose an administrative burden on the
prison's mailroom, thereby detracting from the legitimate
interest in securely and efficiently processing inmate mail.
<u>See</u> Knieriemen Aff. ¶ 6, Doc. No. 45-10.

    With regard to the second <u>Turner</u> factor, alternative means
remain for inmates to receive their mail, including having
senders resend the rejected letters after providing a correct
inmate number, as the PPD 5.26 stamp on the envelope would
instruct them to do. <u>See</u> 482 U.S. at 90. Moreover, Novosel
received post-rejection notice of the possible reason for the
letters' return, as well as a meaningful opportunity to
challenge that reason via the prison's grievance procedure. <u>See</u>
Lena v. DuBois, No. 93-1924, 1994 WL 99940, at *1 (1st Cir. Mar.
23, 1994) (holding that prison's failure to provide prompt,
written notice of rejection of a book mailed to an inmate was of

no consequence, as the inmate eventually received notice and had an opportunity to appeal the reason for the book's return).

As to the third Turner factor, providing inmates with prior notice of mail rejected due to insufficient address and an opportunity to challenge the rejection before the letter is sent back would burden prison resources and detract from the task of examining properly delivered mail for contraband. See 482 U.S. at 90; Knieriemen Aff. ¶ 6, Doc. No. 45-10. In fact, providing notice may be even more burdensome than delivering insufficiently addressed mail. Lastly, under the fourth factor, Novosel has not proposed an "an obvious, easy alternative" to the current policy, as he has not countered the argument that providing prior notice and an opportunity to appeal would unduly burden prison resources. See Turner, 482 U.S. at 90-91.

Because Novosel cannot establish that defendants violated his due process rights by failing to provide him with prior notice and an opportunity to appeal the decision to reject letters lacking his inmate number, I grant defendants' motion for summary judgment with respect to this claim.

16

**IV.   CONCLUSION**

For the reasons stated above, I grant the defendants' motion for summary judgment (Doc. No. 45) and deny Novosel's motion for summary judgment (Doc. No. 51).  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


December 16, 2011

cc:   Viktor Novosel, pro se
      Robert S. Carey, Esq.
      Kristen A. Fiore, Esq.
      Matthew G. Mavrogeorge, Esq.